NAIDENE PARKER CALVERT, Appellant, v.
WILLIAM JAY CALVERT, Respondent.

No. 3348

February 19, 1942.                    122 P. (2d) 426.

*Morley Griswold, George L. Vargas,* and *Bert Gold-water,* all of Reno (*John H. Parker,* of Reno, of counsel), for Appellant.

*E. J. Botts,* of Honolulu, T. I., *Homer Mooney,* of Carson City, and *F. K. Unsworth,* of Reno, for Respondent.

## OPINION

By the Court, ORR, J.:

On December 2, 1940, appellant filed in the Second judicial district court a complaint asking that a decree of divorce entered in said court on the 14th day of January 1939, dissolving the bonds of matrimony theretofore existing between the appellant and respondent, be vacated and set aside, for the reason that said decree was obtained by duress and coercion exerted upon appellant by respondent. Respondent filed a general demurrer to the said complaint, and thereafter the court sustained said demurrer and gave appellant ten days in which to serve and file an amended complaint. Appellant did not elect so to do, and thereafter a judgment and decree dismissing the said action with prejudice was made and entered. From the said judgment and decree appellant has taken this appeal.

The complaint filed in the district court alleges, in substance, that the decree entered therein in favor of appellant was obtained by an exertion of duress and coercion on the part of respondent against the appellant, and that pressure and restraint used by respondent against the appellant, compelled the appellant to act against her will; that respondent, by use of physical violence, threats, and intimidation against the appellant, and "in addition, by exertion of control irrespective of the manifestation or apprehension of physical force, compelled said appellant to conduct herself according to the desires of respondent and virtually

took away and destroyed any free agency on the part of appellant."

It is further alleged that for many years prior to November 1938, while appellant and respondent were living together as man and wife, respondent had treated appellant with mental and physical cruelty, insulted and neglected appellant on numerous occasions, and used force and violence upon the appellant, which consisted of brutal beatings and chokings; that appellant was estranged from respondent for a number of years because of certain physical ailments suffered by respondent; that respondent during the year 1937 and for some months thereafter encouraged a friendship between appellant and another, and encouraged appellant to divorce the respondent and marry another; and that a certain party referred to in the complaint and the respondent conspired to have appellant procure a divorce from respondent, and induced the appellant to believe that the party mentioned would marry and support and care for the appellant, but that these protestations were merely for the purpose of permitting respondent to get rid of the appellant as his wife; and that thereafter the respondent, having encouraged the said friendly relations between the appellant and the party mentioned, threatened to intimate publicly that the said relations and friendship were not proper; that the whole conduct of the respondent was to commit a fraud upon the appellant and deprive the appellant of her home by threats and coercion, to the effect that respondent would expose appellant to ridicule and social ostracism, and that said threats were accompanied by physical violence and the manifestation of the control exercised by a husband over a wife; that on or about the 4th day of July 1938, the respondent demanded of appellant that appellant procure a divorce; that said demand was accompanied by force and threats of such extreme violence that appellant was compelled to act against her will; that respondent threatened to sue

appellant for a divorce if appellant failed to comply with the demands of respondent; that respondent threatened to circulate a story concerning appellant composed of malicious untruths, calculated to bring social contempt upon appellant, and threatened to involve the son of appellant and respondent and bring disgrace upon said son and ruin his social and military position; that the respondent professed to know certain stories concerning appellant which he threatened to expose, and thereby malign and injure the appellant. That respondent demanded that the appellant leave their domicile in Virginia and proceed to Reno, Nevada, and there procure a divorce; that appellant was coerced by threats, violence and cruelty to leave Virginia and go to Reno, Nevada; that appellant remained in Reno and employed counsel and caused a divorce action to be instituted in the district court. She alleges that all of her acts were under compulsion by reason of fear for her physical safety and a public scandal which would result if she disobeyed the directions of the respondent. It is further alleged that the appellant was not free to confide in her counsel concerning the duress and coercion which she had and was then suffering. That at the time of the demand upon her by respondent that she procure a decree of divorce, appellant was forty-five years of age and had been married to respondent for twenty-five years; that under the agreement executed between them, the appellant was to receive two hundred dollars a month for the period of twenty-five months, which said sum she has received from respondent.

■ It is insisted by appellant that the foregoing allegations are sufficient to justify the vacation of the decree of divorce upon the ground of fraud. To authorize the vacation of a decree for fraud, in this state, the fraud must be extrinsic. Confer v. Second Judicial District Court, 49 Nev. 18, 234 P. 688, 236 P. 1097; Chamblin v. Chamblin, 55 Nev. 146, 27 P. (2d) 1061.

■ A distinguishing feature appearing in the cases

as to when fraud will justify the vacation of a decree is whether or not the wife has had the opportunity of consulting counsel of her own choosing, and the opportunity afforded to present the matters complained of to independent counsel and to the court, so that protection could be afforded. Such an opportunity stamps the fraud as intrinsic. The allegations of the complaint admit of the conclusion that appellant had the advice and assistance of competent counsel of her own choosing, that she could have informed her counsel of the fraudulent practice, and that she could have had the protection of her counsel and of the court. Appellant alleges, however, that she did not disclose to her counsel the true conditions existing, because of the fear of physical violence, social degradation and ostracism threatened by respondent. She attempts to differentiate this case upon that theory; that notwithstanding she was some three thousand miles from the respondent, had employed and consulted with competent counsel, yet she was so much under the domination of the respondent that she could not really act. Such an allegation cannot justify a reclassification of the fraud. She could have had a full and complete hearing on those points during the pendency of the action. It is opportunity to disclose the facts and have them acted on that controls. Here the opportunity given places this case squarely in line with the weight of authority denying relief under such circumstances, and squarely within the rule announced in the case of Hendricks v. Hendricks, 216 Cal. 321, 14 P. (2d) 83, the facts of which are strikingly similar to those of the case at bar, and in which said case the fraud was held to be intrinsic. There the court said:

"Where, however, evidence of the coercion or duress or the fraud could have been presented to the court or to an attorney of the complainant's own choosing during the pendency of the action so that full examination of the facts could be made and full protection given to the rights of the parties, equity will not interfere but will

leave the parties to the fraudulent transactions where they have placed themselves."

The case of Kellett v. Kellett, Cal. App., 26 P. (2d) 859, follows the same rule, and quotes extensively from the case of Hendricks v. Hendricks, supra. And in the case of Lanktree v. Lanktree, 42 Cal. App. 648, 183 P. 954, at page 955, it is stated:

"Even though the alleged cruelty of the husband was such as to amount to coercion by which the plaintiff was induced to enter into the oral agreement to procure a collusive divorce, that coercion could not have acted upon her when she was represented by counsel, as she must have been to carry the prohibitive bargain into effect. If she had told her attorneys or the court that she had been coerced into making the bargain, she might have been fully protected in regard to her marital rights."

See, also, Godfrey v. Godfrey, 30 Cal. App. (2d) 370, 86 P. (2d) 357; Bancroft v. Bancroft, 178 Cal. 359, 173 P. 579, L. R. A. 1918F, 1029; Robinson v. Robinson, 77 Wash. 663, 138 P. 288, 51 L. R. A. (N. S.) 534; Johnson v. Johnson, 185 Wash. 677, 56 P. (2d) 679; Thompson v. Thompson, 38 Cal. App. (2d) 377, 101 P. (2d) 160.

Appellant has cited the cases of Dennis v. Harris, 179 Iowa 121, 153 N. W. 343; Burton v. Burton, 176 Okl. 494, 56 P. (2d) 385, 104 A. L. R. 728; Cobb v. Cobb, 43 S. D. 388, 179 N. W. 498; Snyder v. Snyder, Tex. Civ. App., 279 S. W. 897; Graham v. Graham, 54 Wash. 70, 102 P. 891, L. R. A. 1917B, 405, 18 Ann. Cas. 999. An examination of these cases will disclose that in each the wife was denied the assistance of counsel of her own choosing; the husband either furnished the counsel or dominated the choice, which distinguishes them from the instant case and destroys their force as authority.

The judgment appealed from is affirmed.