## SARAH P. COLBY, Appellant, *v.* BENJAMIN COLBY, Respondent.

No. 4440

March 27, 1962 369 P.2d 1019

*Jones Wiener & Jones* and *L. O. Hawkins,* of Las Vegas, for Appellant.

*Robert E. Jones* and *Morse & Graves,* of Las Vegas, for Respondent.

## OPINION

By the Court, THOMPSON, J.:

Sarah P. Colby, appellant, and Benjamin Colby, respondent, will be hereafter referred to as "Sarah" and "Benjamin."

To understand the issues presented for our determination, mention must first be made of the history of litigation between the parties regarding their marital status. On June 30, 1955, Sarah was granted a divorce from Benjamin by the Eighth Judicial District Court of Nevada. Benjamin did not appear therein. He was served with process in Washington, D. C. by "personal service outside the state," in accordance with NRCP 4(e) (2). His default was duly entered. On November 6, 1957, Benjamin was granted a divorce a mensa et thoro (separation from bed and board) from Sarah, by the Circuit Court of Maryland. In that action, Sarah appeared personally, pleading, among other matters, the prior Nevada default decree as a defense. In granting Benjamin relief, the Maryland court declared the Nevada decree to be "null, void and of no effect in law or in equity." Sarah appealed, and the Maryland Court of Appeals on May 20, 1958 affirmed the decree of the Circuit Court. Colby v. Colby, 217 Md. 35, 141 A.2d 506.

Finding Sarah in Florida, Benjamin then brought suit in the Circuit Court of Florida, seeking declaratory relief as to his marital status. Sarah moved to dismiss

the complaint therein, which motion was granted. Benjamin appealed. On May 20, 1960, the Florida District Court of Appeal affirmed the ruling of the lower court. Colby v. Colby, 120 So.2d 797 (Fla. 1960). Among other things it held that the declaratory judgment procedure was not available to adjudicate rights of parties who had previously obtained a determination of those rights; that no justiciable controversy existed between them.

On February 2, 1960, after the ruling of the Florida Circuit Court, but before determination by the Florida appellate court, the present action was commenced by Benjamin in the Eighth Judicial District Court of Nevada. The complaint is labeled a "complaint to vacate and set aside a decree of divorce." The relief requested is that the Nevada default decree of June 30, 1955 be vacated and set aside. The predicate for his complaint is that the Maryland decree of November 6, 1957, granting him a divorce a mensa et thoro, and declaring void the prior Nevada default decree, was entered by a court of competent jurisdiction, with both parties before it, and must be given full faith and credit by the courts of Nevada. Sarah moved to dismiss the complaint, asserting that it failed to state a claim upon which relief could be granted. That motion was denied by the court below, whereupon Sarah answered, denying the material averments of the complaint. Issue being joined, Benjamin then moved for summary judgment, pursuant to NRCP 56. The lower court granted summary judgment. It found that there were no genuine issues of fact to be litigated; that the Maryland decree was entitled to full faith and credit by the courts of Nevada; that Benjamin was entitled to have his marital status in Nevada clarified and determined, and had brought a proper proceeding for such relief. Accordingly, it ordered that the Nevada default decree granted Sarah on June 30, 1955 "be and the same is hereby declared null and void, vacated, set aside and held for naught, having no force or effect in law or equity." The present appeal is from the summary judgment thus entered.

Five errors are assigned.[1] We believe that all of them are necessarily embraced within the single issue: Did Benjamin state a claim for relief? In our view, no claim for relief was stated, nor was it possible to do so under the circumstances here presented. In reaching this conclusion, we are compelled to resolve the following questions: First, is this action the "independent action * * * to set aside a judgment for fraud upon the court," contemplated by NRCP 60(b)? Second, does the Uniform Declaratory Judgments Act, NRS 30.010–30.160, provide a procedure by which Benjamin could obtain a declaration of his marital status in Nevada under the circumstances presented? Third, was this action otherwise properly instituted, and a claim for relief stated because of the full faith and credit clause of the United States Constitution? We turn to discuss these questions.

1. *This action is not authorized by NRCP 60(b).* The present independent action was commenced almost five years after entry of the Nevada default decree. It sought to set aside such decree. The lower court granted the requested relief. This court has, for many years, recognized that a decree of divorce may be annulled by an independent proceeding for that purpose upon proof of extrinsic fraud. Confer v. District Court, 49 Nev. 18, 234 P. 688, 236 P. 1097; Chamblin v. Chamblin, 55 Nev. 146, 27 P.2d 1061; Calvert v. Calvert, 61 Nev. 168, 171, 122 P.2d 426, 427; Lauer v. District Court, 62 Nev. 78, 140 P.2d 953; Mazour v. Mazour, 64 Nev. 245, 180 P.2d 103; Murphy v. Murphy, 65 Nev. 264, 271, 193 P.2d 850, 854; Villalon v. Bowen, 70 Nev. 456, 273 P.2d 409. In Murphy v. Murphy, supra, this court said: "Extrinsic fraud has been held to exist when the unsuccessful party is kept away from the court by a false promise of compromise, or such conduct as prevents a real trial upon

[1] It is claimed that the lower court erred in holding: (a) that the complaint stated a claim for relief; (b) that no factual issues remained; (c) that the alleged fraud was the basis for an independent action to set aside a Nevada decree; (d) that the full faith and credit clause applies to this case; (e) that a justiciable controversy was presented for determination.

the issues involved, or any other act or omission which procures the absence of the unsuccessful party at the trial. Further, it consists of fraud by the other party to the suit, which prevents the losing party either from knowing about his rights or defenses, or from having a fair opportunity of presenting them upon the trial." Conversely, in Calvert v. Calvert, supra, we described intrinsic fraud in the following language: "A distinguishing feature appearing in the cases as to when fraud will justify the vacation of a decree is whether or not the wife has had the opportunity of consulting counsel of her own choosing, and the opportunity afforded to present the matters complained of to independent counsel and to the court, so that protection could be afforded. *Such an opportunity stamps the fraud as intrinsic.*" (Emphasis supplied.)

The "fraud" involved in the instant case is simply the finding by the Maryland court in a later action, that Sarah did not possess the required bona fide intent as to domicil when she testified before the Nevada court, and thereby committed a "fraud" upon it. Nothing appears from the record before us tending to establish that Benjamin was prevented by Sarah's conduct from a fair opportunity to assert his rights in or present his defenses to the Nevada action. It is apparent that he voluntarily elected to refrain from entering an appearance therein. Clearly the "fraud" here contended for is intrinsic; it is not extrinsic.

Insofar as the question of fraud is concerned, we do not find any solid basis for distinction between the case at bar and the cases of Confer v. District Court, supra, and Chamblin v. Chamblin, supra. In Confer v. District Court, supra, the husband obtained a Nevada divorce. The wife appeared in the action by answer and cross-complaint. After trial, the court entered a decree for the husband. Almost two years later the former wife commenced an independent suit, seeking to set aside the divorce decree, claiming that the court was without jurisdiction because the plaintiff's testimony therein was false in that he never intended to make Nevada his bona fide home and domicil. This court

found that the alleged fraud was not extrinsic in nature, and dismissed the proceeding. In Chamblin v. Chamblin, supra, a former wife brought an independent action to set aside her former husband's decree, claiming that it was obtained on perjured testimony. This court held that the complainant had been afforded every opportunity to appear and defend the prior suit; that the claimed fraud was not extrinsic in nature, and that a cause of action was not, therefore, asserted. We hold that the complaint herein fails to state a claim for relief based upon extrinsic fraud.

Notwithstanding, Benjamin urges that an independent action to set aside the prior default decree is proper under NRCP 60(b) because such prior decree is void. His argument in this regard is that the Maryland decree had the effect of rendering the prior Nevada decree void. We find no merit in this argument. It is true that in La Potin v. La Potin, 75 Nev. 264, 339 P.2d 123, we held that an independent action was proper, under the mentioned rule, to set aside a prior decree, where the record established that the defendant in the prior action was never served with process; the court was, in fact, without jurisdiction, and the decree was void. See also: Perry v. Seventh Judicial District Court, 42 Nev. 284, 174 P. 1058. However, the instant case is totally different. The record before us shows that the Nevada court had jurisdiction to enter the decree. Procedural due process was accorded the defendant therein. The decree was not void on the face of the record and, for the reasons heretofore mentioned, extrinsic fraud has not been shown.

We conclude, therefore, that the present action is not the "independent action * * * to set aside a judgment for fraud upon the court," contemplated by NRCP 60(b), and that a claim for relief thereunder is not presented.

2. *This action is not authorized by the Uniform Declaratory Judgments Act.* The complaint herein does

not specifically request relief under the Uniform Declaratory Judgments Act. It does, however, contain the charge that the marital status of the parties is uncertain. The judgment entered expresses the lower court's view that Benjamin "is entitled to have his marital rights and status clarified and determined." The briefs on appeal mentioned declaratory relief, as did counsel in oral argument. Sarah, the respondent, does not contend that we should refuse to consider said act because of the characterization of the complaint as one to "vacate and set aside a decree of divorce." Rather, she has assumed that we will consider it. Therefore, we believe ourselves compelled to determine whether the present action is authorized by that act. NRS 30.010–30.160.

NRS 30.030 provides in part: "* * *; and such declaration shall have the force and effect of a final judgment or decree." The final decree determining the marital status of Sarah and Benjamin in Nevada was entered by the district court on June 30, 1955. In Kress v. Corey, 65 Nev. 1, 26, 189 P.2d 352, 364, this court quoted with approval a statement from Borchard, Declaratory Judgments, wherein four requisite precedent facts for declaratory relief are summarized. One of them is that "the issue involved in the controversy must be ripe for judicial determination." The question concerning marital status was "ripe for determination" by the Nevada court in 1955, and was then determined. No appeal was taken from that determination. The court was acting within its jurisdiction when it made it. It is not subject to attack upon the claim of extrinsic fraud, for the reasons heretofore given. A justiciable issue as to the parties' marital status in Nevada does not now exist. Colby v. Colby, 120 So.2d 797 (Fla. 1960) ; Garvin v. Garvin, 306 N.Y. 118, 116 N.E.2d 73.

We conclude that, under the circumstances of this case, a claim for relief under the Uniform Declaratory Judgments Act is not stated.

3. *Full Faith and Credit.* The primary thrust of

respondent Benjamin's argument in support of the judgment entered below rests upon the full faith and credit clause of the United States Constitution. Because of that clause he insists that Nevada must recognize the Maryland decree as the binding determination of the parties' marital status *in Nevada.* Sutton v. Leib, 342 U.S. 402, 72 S.Ct. 398, 96 L.Ed. 448, is cited as supporting authority. We do not consider that case to be in point. In Sutton v. Leib, supra, the marital status of the former Mrs. Leib was in issue. She was the plaintiff. Her marital status had never been before a Nevada court for determination. She had never been a party to a judicial proceeding in Nevada. She had married a Mr. Henzel after he had obtained a Nevada default divorce. That marriage was later annulled and declared void by a New York court with personal jurisdiction over both parties. In holding that the Illinois federal court must give full faith and credit to the New York annulment decree (and stating, by dictum, that Nevada would have to do the same), *the Supreme Court did not indicate that Mr. Henzel's Nevada divorce was not valid in Nevada.* That question was not presented for decision. It is presented in the case at bar.

Analysis demands the conclusion that Benjamin does not here ask us to merely accord full faith and credit to the Maryland decree. Instead, we are asked to give it greater credit and respect than the prior decree of our own state lawfully entered. Full faith and credit does not require, nor does it contemplate, such action from us. Perry v. Perry, 51 Wash.2d 358, 318 P.2d 968; Hammell v. Britton, 19 Cal.2d 72, 119 P.2d 333; Martin Bros. Box Co. v. Fritz, 228 Iowa 482, 292 N.W. 143.

The judicial status of a prior default decree in the state that decreed it, has not been definitely determined by the United States Supreme Court. However, in Williams v. North Carolina, 325 U.S. 226, 231, 239, 65 S.Ct. 1092, 1096, 89 L.Ed. 1577, 1582, 1587, the majority opinion, written by Mr. Justice Frankfurter, appears to assume the validity of the prior Nevada default decree in Nevada, for he wrote, inter alia: "If a finding by the Court of one State that domicil

in another State has been abandoned were conclusive upon the old domicilary State, the policy of each State in matters of most intimate concern could be subverted by the policy of every other State. This Court has long ago denied the existence of such destructive power. The issue has a far reach. For domicil is the foundation of probate jurisdiction precisely as it is that of divorce." Mr. Justice Murphy, in his concurring opinion in Williams v. North Carolina, supra, stated: "The State of Nevada has unquestioned authority, consistent with procedural due process, to grant divorces on whatever basis it sees fit to all who meet its statutory requirements. It is entitled, moreover, to give its divorce decrees absolute and binding finality within the confines of its borders."

Mr. Justice Rutledge and Mr. Justice Black, in dissenting opinions in that case, each called attention to the fact that the majority opinion therein does not hold that the Nevada judgment is invalid in Nevada.

We hold, therefore, that the default decree of divorce granted Sarah by the Nevada district court in 1955 is a valid, final and conclusive determination of the marital status of Sarah and Benjamin in Nevada; that a claim for relief is not asserted under the full faith and credit clause of the United States Constitution.

Reversed.

BADT, C. J., and McNAMEE, J., concur.