LEOLA CLAIR HAWS, APPELLANT, *v.* JESSE WILLIAM HAWS, RESPONDENT.

No. 10509

September 5, 1980                                      615 P.2d 978

*James F. Sloan,* Reno, for Appellant.

*Sinai, Ohlson, Schroeder, Specchio & Albright,* Reno, for Respondent.

## OPINION

By the Court, BATJER, J.:

Leola and William Haws were married in 1939. From 1948 until 1973 they resided in California. In 1971, Leola wrote a letter to William proposing a division of community property. She told William he could keep all the proceeds from his United Airlines pension. The couple did not separate until January, 1973, when William moved to Nevada.

On August 6, 1975, Leola commenced divorce proceedings in California. William was personally served in California on October 8, 1975. He chose not to appear in the California

action. William had filed for a divorce in Nevada on October 6, 1975. Leola was personally served in California on December 16, 1975. She did not appear in the Nevada action.

On October 22, 1975, the California court awarded temporary support of $1,100 per month and attorney's fees of $2,000 to Leola. An interlocutory judgment of dissolution of marriage was entered July 9, 1976. The judgment provided for spousal support of $1,500 per month and an even division of community property. The California judge was not aware of Leola's 1971 letter.[1] No appeal was taken from the California judgment.

In Nevada, William obtained a default divorce on January 14, 1976. The judgment of divorce did not divide the community, nor provide for spousal support. On June 3, 1976, Leola moved to set aside the Nevada divorce. The parties stipulated to set aside the Nevada judgment to the extent, if any, it adjudicated property rights and support. They further stipulated that the Nevada court conduct an evidentiary hearing concerning community property and support. A hearing was held on January 5, 1977.

In April, 1977, the district judge entered a judgment dividing the community assets pursuant to the 1971 letter and awarding arrearages in support and attorney's fees pursuant to the California temporary support order. Consequently, William was awarded all of his pension benefits and Leola was awarded $4,400 for temporary support payments due before the Nevada divorce and $2,000 for attorney's fees in addition to the other property she received pursuant to the letter. The court denied permanent alimony.

Leola moved, pursuant to NRCP 59, for a new trial, contending that the California interlocutory judgment should have been given full faith and credit in Nevada. Following a hearing, her motion was denied and this appeal was taken.

An interlocutory judgment rendered by a California court having subject matter jurisdiction and personal jurisdiction over both spouses is a final judgment entitled to full faith and credit, except as to marital status. Mizner v. Mizner, 84 Nev.

---

[1]The major differences between the 1971 letter and the California judgment were that the letter allocated the United Airlines stock to Leola and all of the pension to William, whereas the judgment awarded the United Airlines stock to William and gave each party half of the pension. The California court was aware that William was holding the stock as security for a $21,000 loan to Leola. Leola's debt was included in the California court's calculation of an equal division of the community.

268, 439 P.2d 679, *cert. denied* 393 U.S. 847, *reh. denied* 393 U.S. 972 (1968); Wilson v. Superior Court, 189 P.2d 266 (Cal. 1948). The California court had jurisdiction, and its judgment should be given the same faith and credit in Nevada as it would receive in California. U.S. Const. art. IV, § 1;[2] Fauntleroy v. Lum, 210 U.S. 230 (1908); Summers v. Summers, 69 Nev. 83, 241 P.2d 1097 (1952).

In California, the doctrine of *res judicata* bars relitigation between the same parties of property rights that were adjudicated in previous litigation. Sutphin v. Speik, 99 P.2d 652 (Cal. 1940); Henn v. Henn, 605 P.2d 10 (Cal. 1980). *Cf.* Kraemer v. Kraemer, 79 Nev. 287, 382 P.2d 394 (1963) (alimony); Wicker v. Wicker, 85 Nev. 141, 451 P.2d 715 (1969) (Wisconsin judgment). William could have appeared in California and argued his case. He chose not to do so. *Res judicata* should have precluded relitigation of property rights and support in Nevada.

However, William argues that the California judgment was procured by fraud and, therefore, is not entitled to full faith and credit. The alleged fraud was Leola's failure to inform the California court of the 1971 letter.

Extrinsic fraud is a basis for relief from judgment and a defense to full faith and credit; intrinsic fraud is not. Colby v. Colby, 78 Nev. 150, 369 P.2d 1019, *cert. denied* 371 U.S. 888 (1962); In re Marriage of Carletti, 126 Cal.Rptr. 1 (Cal.App. 1975). In this case, the fraud, if any, was intrinsic because William was not prevented from knowing of his rights or from having an opportunity to appear and present them at trial. McCarroll v. McCarroll, 96 Nev. 455, 611 P.2d 205 (1980); Muscelli v. Muscelli, 96 Nev. 41, 604 P.2d 1237 (1980); *Colby,* 78 Nev. at 153. William voluntarily chose not to appear in the California action after he was served. He was the recipient of the 1971 letter and could have introduced the letter himself. He did not appeal the California judgment or move within six months to set it aside. He is bound by the California judgment.[3] Boeseke v. Boeseke, 519 P.2d 161 (Cal. 1974); *Carletti,* 126 Cal.Rptr. at 4.

---

[2]Art. IV, § I: Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State.

[3]Although neither party refers to it, NRCP 60(d) is the only conceivable basis for this action. NRCP 60(d) states:

Whenever a default judgment or decree has been entered, the party or parties in default therein may at any time thereafter, upon written consent

During oral argument, Leola's counsel indicated that Leola sought an adjudication of property rights in Nevada because she believed William's real estate purchases in Nevada, following their separation, were community property.

The division of the community property is governed by California law because California was the marital domicile and Leola's residence at the time of the dissolution. California Civil Code § 5118 provides that earnings and accumulations of a spouse following separation are classified as separate property. Therefore, after separating from Leola in 1973, William's acquisitions were his separate property.

The California interlocutory judgment was a full and final adjudication of the parties' community property. Accordingly, the order is reversed and the case is remanded with instructions to give full faith and credit to the California judgment.

MOWBRAY, C. J., and THOMPSON, GUNDERSON, and MANOUKIAN, JJ., concur.

---

of the party or parties in whose favor judgment or decree has been entered, enter general appearance in the action, and the general appearance so entered shall have the same force and effect as if entered at the proper time prior to the rendition of the judgment or decree. On such appearance being entered the court may make and enter a modified judgment or decree to the extent only of showing such general appearance on the part of the party or parties in default, and it shall be entered nunc pro tunc as of the date of the original judgment or decree; provided, however, that nothing herein contained shall prevent the court from modifying such judgment or decree as stipulated and agreed in writing by the parties to such action, and in accordance with the terms of such written stipulation and agreement.

An order pursuant to NRCP 60(d) only has the effect of modifying the earlier judgment to reflect a general appearance by the defaulting party. *See e.g.,* Chusid v. Chusid, 142 N.Y.S.2d 846 (Sup.Ct. 1955); Zeitlan v. Zeitlan, 298 N.Y.S.2d 816 (App.Div. 1966). Further modification is barred by *res judicata* unless it is in accordance with the terms of a written stipulation or agreement by the parties. In this case, the district judge clearly exceeded the permissible scope of a judgment entered *nunc pro tunc.*