MARIA E. I. HINDENES, AKA MARIA E. I. WHITNEY HINDENES, FORMERLY KNOWN AS MARIA E. I. WHITNEY, APPELLANT, *v.* RAYMOND B. WHITNEY, AN ADULT WARD, BY MARY WHITNEY VOGELHEIM, HIS GUARDIAN AD LITEM, RESPONDENT.

No. 15238

April 5, 1985                                      697 P.2d 932

[Rehearing denied December 24, 1985]

*Breen, Young, Whitehead, Belding & Hardesty,* Reno, for Appellant.

*Cooke, Roberts & Reese,* Reno, for Respondent.

## OPINION

By the Court, ROBISON, D. J.:

Appellant, Maria Whitney Hindenes, wife and defendant below, and respondent, Raymond B. Whitney, husband and plaintiff below, were married in 1959. Raymond was employed in the computer industry and eventually attained the position of vice president and received a good salary, generous expense account, and valuable stock options. The parties acquired substantial real property and stock and, in 1966, Raymond formed his own computer business. The parties realized approximately $500,000 for the years 1965 through 1967 from Raymond's salary and the sale of real and personal property. Raymond managed the community property, and Maria was not consulted on business matters prior to 1967. The parties incurred large tax liabilities with the State of California and the Internal Revenue Service, and the computer business became insolvent because of Raymond's mismanagement of the community assets.

In 1967, Maria began taking an active interest in managing the community property and was successful utilizing community assets in satisfying the tax obligations. She continued to participate in financial matters with the knowledge and consent of Raymond from that point forward. From 1966 to 1975, Raymond was unable to maintain steady employment and held various jobs, each progressively less responsible with commensurate lower salaries. Raymond attempted to form another computer company utilizing community assets in 1971-72, but this venture also ended in failure. At this time, the parties were living separate and apart, and in an attempt to provide for his wife, Raymond deeded certain real property located in California and Nevada to her in 1973-74.

In 1975, Maria, a Nevada resident, consulted an attorney regarding a divorce. Subsequently, Raymond met his wife at her attorney's office in Sparks and, after a consultation, executed a power of attorney authorizing another attorney to appear on his behalf in the divorce action. Maria filed her divorce complaint on January 13, 1976, and a decree of divorce was granted the same day. The only community property before the court consisted of

furniture and fixtures, which were awarded to Maria. After the divorce, Raymond lived in Sacramento employed as a salesman for a sprinkler and awning company. Some thirty (30) months later, he was diagnosed as having Alzheimer's disease. The instant suit, which was filed by Raymond's duly-appointed Guardian ad Litem on May 30, 1980, sought damages alleging fraud, an accounting of properties transferred to Maria, and an order vacating the divorce decree.

This appeal is from a final judgment in that action based on a jury verdict setting aside the parties' divorce and ordering Maria to pay $123,685.06 in punitive damages. The fraud allegations were on numerous grounds: (1) that Maria concealed her husband's incompetent mental condition from the court; (2) that Maria failed to disclose all the community property to the court; (3) that Maria fraudulently procured Raymond's signature on the power of attorney; and (4) that Maria's fraud prevented Raymond from defending the divorce action and asserting legal rights and remedies that were available to him.

The jury found by four special verdicts, the following:

(1) That Raymond was not incompetent on January 23, 1973, April 23, 1973, July 29, 1974 (dates real property was transferred to Maria). That Raymond was incompetent January 8, 1976.

(2) That Maria did not make any false representations upon which Raymond relied to induce him to make the real property transfers. That Maria did make false representations to Raymond to induce him to sign the power of attorney in the 1976 divorce action.

(3) That Maria became aware that Raymond was incompetent in July 1975.

(4) That Raymond should be awarded 50% of Maria's net worth as of January 13, 1976, for punitive damages.

Based on these special verdicts, the evidence and testimony, the district court found Maria's net worth to be $247,370.12 and awarded one-half ($123,685.06) as and for punitive damages. The district court further ordered that the parties' divorce decree of January 13, 1976, be set aside and vacated.

Maria seeks reversal on numerous grounds: (1) that the lower court committed reversible error in instructing the jury as to the burden of proof; (2) that special verdict number 4 is too vague and indefinite for entry of judgment, and the record does not supply essential missing facts to establish the net worth of Maria; and (3) that the lower court erred in entering judgment for punitive damages, when the jury did not award compensatory damages.

Maria's first contention has merit and, for the following reasons, the judgment of the district court is reversed and the matter remanded for further proceedings consistent with this opinion.

As to the first assignment of error, the jury instruction given by the trial court over objection as to the burden of proof read in part: "[T]he burden of proof as to fraud is something more than a preponderance of evidence and less than clear and convincing evidence." In the court below, Raymond alleged both common law fraud and extrinsic fraud in an independent equitable action to set aside the divorce decree. *See, e.g.,* Muscelli v. Muscelli, 96 Nev. 41, 604 P.2d 1237 (1980); NRCP 60(b). Under either claim, the burden is on the plaintiff to establish fraud by clear and convincing evidence. In Occhiuto v. Occhiuto, 97 Nev. 143, 146 n. 2, 625 P.2d 568, 570 n. 2 (1981), this court established the burden of proof in an independent equitable action for fraud upon the court as clear and convincing evidence. *See also,* Lubbe v. Barba, 91 Nev. 596, 598, 540 P.2d 115, 117 (1975). This instruction constitutes prejudicial and reversible error requiring a new trial. We, therefore, need not address the other issues presented because they involve claims of error which may not reoccur upon retrial.[1]

Reversed and remanded.

SPRINGER, C. J., MOWBRAY, GUNDERSON and STEFFEN, JJ., concur.[2]

---

[1]Because the parties have not specifically raised the propriety of a jury trial in an independent equitable action to set aside a divorce decree, we make no determination on this issue. However, we instruct the trial court to consider carefully the propriety of a jury trial in this case.

[2]The Honorable Norman C. Robison, Judge of the Ninth Judicial District Court, was designated by the Governor to sit in place of the former JUSTICE NOEL E. MANOUKIAN, who voluntarily disqualified himself. Nev. Const., art. 6, § 4. JUSTICE C. CLIFTON YOUNG did not participate in the consideration of this case.