ANITA MANVILLE, Appellant, *v.* THOMAS F. MANVILLE, Jr., CHRISTINA MANVILLE, PAT GASTON and JOHN SUTTON, Respondents.

No. 4637

December 10, 1963

387 P.2d 661

*Harry E. Claiborne,* of Las Vegas, for Appellant.

*Bradley & Drendel,* of Reno, for Respondents.

## OPINION

By the Court, McNAMEE, J.:

Pursuant to NRCP 60(b) appellant filed this independent action in the court below to set aside a decree of divorce entered in her favor on September 13, 1955 against respondent Thomas F. Manville, Jr., upon the ground of fraud. The alleged fraud consisted of coercion and threats of bodily harm on the part of said respondent which forced the appellant to go to Reno, Nevada, and file a complaint for divorce in the district court there without establishing a proper residence, and that thereafter respondent fraudulently connived to have appellant's twin sister, Juanita Ingraham, impersonate appellant at the trial, thereby surmounting appellant's refusal to proceed with her action. Upon Juanita's testimony the divorce was granted. It is not denied that on September 13, 1955 appellant initiated the divorce action by signing and verifying the complaint for divorce.

Appellant learned of the impersonation on the same day the decree of divorce was granted, and accepted the benefits of the divorce by way of alimony.[1] On February

---

[1] In this connection, respondents' brief recites: "Respondents respectfully call to the Court's attention that the Trial Court took judicial notice of the property settlement incorporated in the Decree of Divorce which Appellant, by this action, seeks to have set aside. Immediately following the entry of the Decree of Divorce on September 13, 1955, Appellant presented a certified copy of the Decree of Divorce to the First National Bank of Nevada and picked up $120,000, per the property settlement agreement and signed an escrow receipt therefor. In addition, the property settlement agreement incorporated in said Decree of Divorce provides for payment to Appellant of the sum of $1,000 per month for a period of ten years, commencing October 1, 1955. These monthly payments have been made by Respondents pursuant to the Decree of Divorce and have been accepted by Appellant." These statements are not denied by appellant.

24, 1957 she and respondent John Sutton were married, which marriage was not terminated until June 2, 1960. Subsequent to September 13, 1955 respondent Thomas F. Manville, Jr., married Christina Manville, one of the respondents, who is still his wife.

Upon these facts appearing from the complaint, the lower court granted respondent's motion to dismiss.

Insofar as those elements of the alleged fraud consisting of threats of bodily harm and coercion are concerned, had appellant appeared at the trial, this claim of fraud would have been intrinsic. Calvert v. Calvert, 61 Nev. 168, 122 P.2d 426. Whether her failure to appear at the trial made this fraud extrinsic we need not decide for the reasons hereinafter stated. The fraud consisting of the failure to establish a proper residence for divorce was intrinsic. Colby v. Colby, 78 Nev. 150, 369 P.2d 1019; Confer v. District Court, 49 Nev. 18, 234 P. 688, 236 P. 1097. Relief from intrinsic fraud, under NRCP 60(b), must be sought not later than six months after the decree was entered.

NRCP 60(b) provides in part: "This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to set aside a judgment for fraud upon the court."

The purpose of this part of the rule is to afford relief upon proof of extrinsic fraud, and the said six months' limitation has no application.

The fraud consisting of Juanita's impersonation of appellant is extrinsic. Murphy v. Murphy, 65 Nev. 264, 193 P.2d 850; Chamblin v. Chamblin, 55 Nev. 146, 27 P.2d 1061. This fraud however was known to appellant on September 13, 1955, the same day the decree of divorce was granted, and she took no action to set the

decree aside until June 22, 1962, when she filed this suit for relief more than six years and nine months later.[2]

The statute of limitations is applicable to a proceeding to set aside a decree of divorce procured by extrinsic fraud.[3] Howard v. Howard, 69 Nev. 12, 239 P.2d 584. It is therefore unnecessary to discuss the question of laches.

When the defense of the statute of limitations appears from the complaint itself, a motion to dismiss is proper. Cf. Nevada-Douglas Consolidated C. Co. v. Berryhill, 58 Nev. 261, 75 P.2d 992. That the statute was tolled, as claimed by appellant, does not appear from the record on appeal.

Affirmed.

BADT, C. J., and THOMPSON, J., concur.

---

[2]Appellant's argument that she did not know the decree could be challenged until her marriage to Sutton was terminated and that therefore the statute of limitations, if applicable in this case, would not commence to run until that time is without merit. Her complaint alleges: "In the month of October, 1955 the plaintiff herein contacted her said attorney, Mr. W. C. McCluskey, to inquire as to the validity of the divorce, and was advised by said attorney that it was valid upon its face, that is that it was considered legal until such time as proceedings were instituted to correct the fraud perpetrated upon the court on the 13th day of September, 1955."

[3]We are not here concerned with a decree which is void on its face.