LEAGUE TO SAVE LAKE TAHOE, Appellant, *v.* TAHOE REGIONAL PLANNING AGENCY, HARVEY'S WAGON WHEEL, INC., OLIVER KAHLE, and TED JENNINGS, Respondents.

No. 8693

May 3, 1977                                   563 P.2d 582

*Coleman A. Blease,* of Sacramento, California, and *Janet L. Chubb,* of Sparks, for Appellant.

*Owen & Ralston,* of Carson City, for Respondent Tahoe Regional Planning Agency.

*Laxalt, Berry & Allison,* of Carson City, for Respondent Harvey's Wagon Wheel, Inc.

*Breen, Young, Whitehead & Hoy,* of Reno, for Respondent Kahle.

*McDonald, Carano, Wilson, Bergin & Bible,* and *John J. Frankovich,* of Reno, for Respondent Jennings.

272

## OPINION

By the Court, THOMPSON, J.:

This action by League to Save Lake Tahoe was commenced August 16, 1974. Its purpose is to bar construction of resort-hotels in the Tahoe Basin by Oliver Kahle, Ted Jennings, and Harvey's Wagon Wheel, Inc.

The League to Save Lake Tahoe is a foreign nonprofit corporation. It does business in Nevada by engaging in activities for which it was incorporated, including the solicitation of memberships and contributions, testifying before legislative committees and governing bodies of political subdivisions, and the holding of public meetings.

When this action was commenced, the League to Save Lake Tahoe was not qualified to do business in Nevada, although doing business here. On May 21, 1975, approximately nine months later, it did qualify to do business in this state.

The district court dismissed the action with prejudice. It reasoned that NRS 80.210 which provides that a foreign corporation ". . . shall not be allowed to commence, maintain, or defend any action or proceeding in any court of this state until it shall have fully complied with the provisions of NRS 80.010 to 80.040, inclusive" mandated dismissal since the League to Save Lake Tahoe had not qualified to do business when suit was commenced.

By this appeal the League to Save Lake Tahoe claims that the court erred in dismissing its case since it later qualified to

do business. This contention places in issue the meaning to be accorded the language of NRS 80.210. In any event, the League contends that the dismissal should not have been with prejudice.[1] We turn to address these contentions.

1.   A foreign corporation transacting business in Nevada is denied access to the courts of this state unless and until it files with the Secretary of State a certified copy of its charter and obtains from him a certificate authorizing it to do business here. NRS 80.210; 80.010; 80.120; cf. Peccole v. Fresno Air Serv., Inc., 86 Nev. 377, 469 P.2d 397 (1970).

Whether tardy compliance with the filing requirements will allow an unauthorized action to go forward is the issue tendered. The League to Save Lake Tahoe lacked capacity to commence this action. We must decide whether the statute, NRS 80.210, allows curative efforts to revive initial lack of capacity to sue.

The issue has not before been decided by this court. Case authority elsewhere is split and not particularly helpful since statutory language differs. Annot., 6 A.L.R.3d 326 (1966).

The League to Save Lake Tahoe contends that the words "maintain" and "until" in the phrase "shall not be allowed to commence, maintain, or defend any action or proceeding in any court of this state until . . ." express a legislative intention that an unauthorized action may be "maintained" upon later compliance with statutory filing requirements. The district court did not so view that language. It reasoned that the word "maintain" was meant to apply to a case commenced by a corporation which had qualified to do business here but which subsequently became unqualified because of failure to comply with continuing statutory requirements. This, we think, is a proper application of the statutory language and we approve it.

2.   The action was dismissed with prejudice. We presume that the dismissal was so structured because of the court's belief that the statute of limitations would be an available defense to bar another action should it be filed.[2]

---

[1]We summarily reject the final contention of the League that NRS 80.210 applies only to foreign corporations doing business for profit. The statute makes no such distinction, and by its express terms applies to "every corporation."

[2]The bar of limitations appears from the face of the complaint. The defense, therefore, may be raised by the motions to dismiss presented by the defendants-respondents. Kellar v. Snowden, 87 Nev. 488, 489 P.2d 90 (1971); Manville v. Manville, 79 Nev. 487, 387 P.2d 661 (1963).

According to the complaint, Douglas County granted special use permits for resort-hotels to Jennings, Kahle and Harvey's Wagon Wheel, Inc., on May 7, 1973, April 24, 1973, and June 20, 1973, respectively.

NRS 278.027 requires court action to be commenced within 25 days of the filing of notice of "final action" of the governing body granting any special use or variance, if judicial review is desired.[3]

As to Jennings and Kahle the action of Douglas County thereafter was reviewed by the Nevada Tahoe Regional Planning Agency (NTRPA) and subsequently by the Tahoe Regional Planning Agency (TRPA). The Nevada agency approved their projects. The TRPA did not reach a decision. California ex rel. Younger v. Tahoe Regional Planning Agency, 516 F.2d 215 (9th Cir. 1975). Consequently, their projects were deemed approved and the decision of Douglas County affirmed. California ex rel. Younger v. Tahoe Regional Planning Agency, supra, at 219. This automatic approval by reason of TRPA's failure to reach a decision occurred on or about August 12, 1974. The record does not reflect similar agency review of the action of Douglas County with regard to Harvey's Wagon Wheel, Inc.

What is "final action" within the intendment of NRS 278.-027? If agency review (NTRPA–TRPA) does not occur, then the action of Douglas County is the "final action," and judicial review, if desired, must be sought within 25 days thereafter. Since such review was not timely sought with regard to Harvey's Wagon Wheel (this action was started approximately one year and seven months after Douglas County acted on Harvey's application for a use permit—if one was ever made) NRS 278.027 is an available defense to bar this action against that defendant-respondent.

If agency review does occur, and TRPA either approves, requires modification of, or rejects the decision of the permit issuing authority, "final action" is taken at that point in time, and judicial review must be sought within 25 days thereafter. If TRPA is unable to decide and does not take "final action"

[3]NRS 278.027 in relevant part: "No action or proceeding shall be commenced for the purpose of seeking judicial relief or review from or with respect to any final action, decision or order of any governing body . . . granting any special use or variance . . . unless such action or proceeding is commenced within 25 days from the date of the filing of notice of such final action. . : ."

(California ex rel. Younger v. Tahoe Regional Planning Agency, supra), what date is to be used for the purposes of NRS 278.027? This is what occurred with regard to Jennings and Kahle.

As before noted the failure of TRPA to take "final action" resulted in an automatic affirmance of the decision of the local permit issuing authority, Douglas County. We construe such automatic affirmance to be the equivalent of "final action" within the meaning of NRS 278.027.

The special use permits issued by Douglas County to Jennings and to Kahle were "automatically affirmed" by the TRPA on August 12, 1974. This action was commenced on August 16, 1974, well within the 25 day period specified in NRS 278.-027. However, at that time the League to Save Lake Tahoe, for reasons heretofore expressed, lacked capacity to commence the action. The League did not qualify to do business in this state until May 21, 1975, some nine months after the special use permit was "automatically affirmed." This belated compliance with the foreign corporation qualification statutes does not defeat the applicability of the statute of limitations during the period of time the corporation was in noncompliance. Alaska Mines & Minerals, Inc. v. Alaska Industrial Board, 354 P.2d 376 (Alas. 1960); Jorgensen v. Baker, 157 N.E.2d 773 (Ill. 1959); Western Electrical Co. v. Pickett, 118 P. 988 (Colo. 1911). Institution of suit before compliance with filing requirements does not toll the statute of limitations, nor does later compliance operate retroactively to permit continuation of the action if the statute of limitations had run between filing of the suit and such compliance. Accordingly, we conclude that NRS 278.027 is an available defense to bar this action against Jennings and Kahle.

Therefore, we affirm the dismissals with prejudice, since to do otherwise would be to countenance the filing of another action as to which limitations is a bar.

MOWBRAY, J., and THOMPSON, D. J., and BRENNAN, D. J., concur.

GUNDERSON, J., dissenting:

With all respect, it appears to me that in deciding the meaning of NRS 80.210, the court's decision disposes of a tremendously significant legal issue without exposition of either logic or precedent to support its holding.

The court's interpretation of NRS 80.210, if not later changed in a case perceived as having greater merit, may certainly occasion harsh results. If this court is to adopt a rule apparently countenancing such results, I suggest we should articulate legal or logical reasons sufficient to command the respect and concurrence of the bench and Bar.